GRAPHIC ARTS MUTUAL INSURANCE COMPANY

V.

C.W. WARTHEN COMPANY, INC.

Record No. 900070

November 9, 1990

Present: All the Justices

*Floyd C. Jennings, Jr. (Petty, Livingston & Dawson,* on briefs), for appellant.
*Norman A. Kinnier (Fralin, Freeman & Kinnier,* on brief), for appellee.

JUSTICE HASSELL delivered the opinion of the Court.

The sole issue that we consider in this appeal is whether a provision in an insurance contract, which' contains an employee dishonesty commercial blanket coverage endorsement, limits the liability of the insurance company that issued the policy.

On August 1, 1983, Graphic Arts Mutual Insurance Company issued a special multi-peril insurance policy to C.W. Warthen Company, Inc. The policy included an employee dishonesty endorsement commonly referred to as a Comprehensive Crime Coverage Endorsement. Coverage commenced on August 1, 1983 and terminated on August 1, 1986. Warthen was required to pay $757 on August 1 of each policy year for a total fixed premium amount of $2,271. Graphic Arts renewed the insurance policy for a one-year period commencing August 1, 1986, and expiring August 1, 1987.

In July, 1987, Warthen's chief executive officer, H.B. Brooks, Jr., learned that a bookkeeper had embezzled approximately $114,000 from the Company during a ten-year period. During the four-year period of August 1, 1983 through August 1, 1987, when Graphic Arts' insurance policy was in effect, Warthen incurred losses attributed to the bookkeeper's acts of embezzlement in excess of $10,000 each year.

A dispute arose between Warthen and Graphic Arts regarding the amount of insurance coverage provided by the policy. Warthen filed a suit for declaratory judgment and asserted that it was entitled to recover $10,000 for each year the policy was in effect, for a total of $40,000. Graphic Arts argued that its total liability was $10,000 and that it had fulfilled its contractual obligation by issuing and delivering to Warthen a draft in the amount of $10,000.

The case was tried before the court without a jury. The court considered testimony, memoranda, and argument of counsel, and concluded that the policy provided coverage to Warthen for employee dishonesty in the amount of $10,000 for each year the policy was in effect. We disagree.

Familiar principles of contract interpretation guide our consideration of this issue. "An insurance policy is a contract, and, as in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such construction." *Hill* v. *State Farm Mutual Auto. Ins.*, 237 Va. 148, 152, 375 S.E.2d 727, 729 (1989). Additionally, in the absence of an ambiguity, which the trial court correctly concluded did not exist in this case, we must interpret the contract by examining the language explicitly contained therein. "[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Globe Company* v. *Bank of Boston*, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965) (citations omitted).

The language contained in the Comprehensive Crime Coverage Endorsement limits Graphic Arts' liability to $10,000. Paragraph IA of the endorsement, in part, provides that the insurer promises to pay the insured for:

> Loss of Money, Securities and other property which the Insured shall sustain, to an amount not exceeding in the aggregate the amount stated in the Table of Limits of Liability applicable to this Insuring Agreement IA, resulting directly from one or more fraudulent or dishonest acts committeed [sic] by an Employee, acting alone or in collusion with others.

The "Table of Limits of Liability" states: "Insuring Agreement IA Employee Dishonesty (Commercial Blanket) Coverage $10,000." Section 11 of the Comprehensive Crime Coverage Endorsement states, in part:

> Regardless of the number of years this endorsement shall continue in force and the number of premiums which shall be payable or paid, the limit of the Company's liability as specified in the Table of Limits of Liability of this endorsement shall not be cumulative year to year or period to period.

■ The insurance contract explicitly limits Graphic Arts' liability to a maximum of $10,000 for the entire coverage period, regardless of the number of years the coverage was in effect. We must interpret the contract as written. We are not free to rewrite its terms and thereby extend coverage:

> It is the function of the court to construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares.

*Magann Corp.* v. *Electrical Works*, 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962) (citations omitted).

Accordingly, we will reverse the judgment of the trial court and enter final judgment on behalf of Graphic Arts.

*Reversed and final judgment.*