## CIRCUIT COURT OF THE CITY OF RICHMOND

Interstate Van Lines, Inc., et al.

v.

Pattie M. Artis et al.

June 5, 1991

Case No. LS4398-2

By JUDGE ROBERT L. HARRIS, SR.

This case is before the court on a Motion for Summary Judgment filed by defendants Pattie M. Artis and Gloria L. Harding, Administrators of the Estates of Jasmine Spruill and Cassandra Spruill ("the Administrators"), and Monica Wiley, and on a Cross-Motion for Partial Summary Judgment filed by plaintiffs Interstate Van Lines, Inc. ("Interstate"), and Van Liner Insurance Company ("VanLiner"). At issue are certain provisions of an insurance policy issued by VanLiner to Interstate to insure Interstate's fleet of vehicles.

The dispute arises as a result of an automobile accident which occurred on December 10, 1989, on I-64's Shockhoe Valley Bridge in Richmond. A tractor-trailer owned by Interstate and driven by David Lee Spruill allegedly collided with a vehicle owned and operated by defendant Ezekiel Mills. Mr. Mills was apparently uninsured at the time of the accident. The tractor-trailer went over the side of the bridge and fell onto a Virginia Power substa-

tion. Spruill, his wife Cassandra, and his infant daughter Jasmine were killed, and Spruill's stepdaughter, Monica Wiley, who was approximately nine years old, survived with allegedly serious injuries.

Monica Wiley and the Administrators filed suits against Spruill's estate and against Ezekiel Mills. Subsequently, Interstate and VanLiner filed a declaratory judgment action asking that several declarations be made. First, Interstate and VanLiner have requested a declaration that Spruill, Cassandra Spruill, Jasmine Spruill, and Monica Wiley were using or occupying the tractor-trailer at the time of the accident without Interstate's permission or authorization. Second, Interstate and VanLiner are seeking a declaration that Spruill was not acting in the course and scope of his employment at the time of the accident, and therefore, Interstate is not liable for any acts or omissions by Spruill at the time of the accident. Finally, Interstate and VanLiner are seeking a declaration that VanLiner is not obligated to defend or indemnify Spruill's estate for any claims arising out of the accident.

These declarations are relevant to the availability of liability coverage under the VanLiner policy and involve disputed issues of material fact. However, Monica Wiley and the Administrators have asserted claims under the uninsured motorist ("UM") coverage provisions of the policy, as well as under the liability provisions. The summary judgment motions currently before the court concern the availability of UM coverage for the passengers' claims and two specific provisions in the UM endorsement of the VanLiner policy. With one exception noted below, there are no issues of material fact genuinely in dispute pertaining to the UM coverage endorsement. Counsel for the Administrators, Monica Wiley, Interstate and VanLiner filed memoranda in support of their motions. Oral arguments were made to the court on April 25, 1991. The issues presented are:

1. Does a UM endorsement provision which states that sums paid under the liability coverage of the policy reduce the limit of liability under the UM coverage violate Section 38.2-2206 of the Code of Virginia, 1950, as amended? ("the offset issue")

2. Does a provision excluding UM coverage to anyone using a vehicle without a reasonable belief that the person

is entitled to do so apply as a matter of law to Cassandra Spruill, Jasmine Spruill, and Monica Wiley as passengers in the Interstate truck? ("the exclusion issue")

3. Is UM coverage available for Cassandra Spruill, Jasmine Spruill, and Monica Wiley if David Spruill is found to have been operating the Interstate tractor-trailer without Interstate's express or implied permission? ("the availability issue")

## 1. *The Offset Issue*

Section 38.2-2206(A) of the Code of Virginia, 1950, as amended, provides that:

> no policy or contract of bodily injury or property damage liability insurance relating to the ownership, maintenance, or use of a motor vehicle shall be issued . . . unless it contains an endorsement or provisions undertaking to pay the insured all sums that he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits not less than the requirements of § 46.2-100. Those limits shall equal but not exceed the limits of the liability insurance provided by the policy, unless the insured rejects the additional uninsured motorist insurance coverage . . . .

The purpose of the statute is remedial, to protect "through their own insurers the innocent victims of irresponsible motorists." *State Farm Mutual Automobile Insurance Co. v. Brower*, 204 Va. 887, 892, 134 S.E.2d 277, 281 (1964). Because the statute was enacted to benefit injured parties, it must be liberally construed to accomplish its intended purpose. *Id.* In addition, in resolving any conflict between the statute and a provision in an insurance policy, it is well-established "that the controlling instrument is the statute and that provisions in the insurance policy that conflict with the requirements of the statute, either by adding to or taking from its requirements, are void and ineffective." *Bryant v. State Farm Mutual Automobile Insurance Co.*, 205 Va. 897, 900, 140 S.E.2d 817, 819 (1965).

The specific offset provision of the VanLiner UM endorsement at issue here reads:

E. *Our Limit of Liability* . . . .
    2. Except for a vehicle described in Paragraph B. of the definition of uninsured motor vehicle [pertaining to underinsurance], any amounts otherwise payable for damages under this insurance shall be reduced by all sums paid by or for anyone who is legally responsible, including all sums paid under the policy's liability insurance.

Counsel for Interstate and VanLiner argue that because the State Corporation Commission approved the VanLiner UM endorsement, the court should give the provisions of the endorsement full force and effect. It is well-established that it is for the court, not the State Corporation Commission, to decide if provisions in an insurance policy violate the terms or intent of a statute. *See Bryant*, 205 Va. 897, 140 S.E.2d 817 and cases cited therein.

The Virginia Supreme Court has not ruled on the enforceability of an offset provision like the one in the VanLiner endorsement. However, courts in other states have held that such a provision is unenforceable. *See, e.g., Stewart v. Capps*, 789 P.2d 563 (1990), *aff'd*, 802 P.2d 1226 (Kan. 1990); *Muir v. Hartford Accident and Indemnity Co.*, 147 Vt. 590, 522 A.2d 236 (1987); *Nicholson v. The Home Insurance Cos.*, 137 Wis.2d 581, 405 N.W.2d 327 (1987).

In *Spain v. Valley Forge Insurance Co.*, 152 Ariz. 189, 731 P.2d 84 (1986), a passenger in a Subaru died from injuries she sustained when the Subaru collided with a car owned and operated by an uninsured motorist. Valley Forge insured the Subaru and provided $100,000 liability coverage and $100,000 UM protection. The passenger was an insured under the terms of the policy. *Id*. at ---, 731 P.2d at 85. The policy contained standard form language that the insurance company was obligated to pay only a single limit of $100,000 per accident. UM coverage terms provided that sums paid under the liability coverage reduced the limit of liability under the UM coverage in a provision

substantially similar to the one at issue in the present case. *Id.*

In holding the offset provisions invalid, the *Spain* court stated that the public policy behind mandatory UM coverage is "that every insured is entitled to recover under his or her UM coverage the damages he or she would have been able to recover from a negligent uninsured driver had that driver maintained a policy of liability insurance with a solvent company." *Id.* at ---, 731 P.2d at 87. The court noted that the policyholder had insured herself and her passengers against two separate and distinct risks: "the risk of liability if she should negligently injure someone, and the risk of having no source from which to recover damages caused by a financially irresponsible driver who might injure her and/or another insured under her policy." *Id.* at ---, 731 P.2d at 88.

These same separate and distinct risks were insured against by Interstate. As it was entitled to do by statute, Interstate purchased from VanLiner UM coverage equal to the amount of liability coverage. Interstate paid one premium for liability coverage and a separate premium for uninsured motorist coverage. As counsel for Monica Wiley and the Administrators have argued, if the court were to validate the offset provision, UM coverage under the policy could be completely eliminated by a payout of the liability coverage limits, thereby undercutting the clear legislative intent that at least certain minimum limits of UM coverage be provided under all insurance policies. In addition, this would result in a windfall to VanLiner, which has been receiving separate premiums from Interstate for UM coverage, should a payout under the liability coverage reduce or eliminate the amount of UM coverage available under the policy.

Accordingly, because the offset provision of the VanLiner UM endorsement violates the clear legislative intent of § 38.20-2206(A) of the Virginia Code that certain limits of UM coverage be provided on all liability insurance policies in Virginia, paragraph E2 of the VanLiner UM endorsement is held to be void and partial summary judgment in favor of the Administrators and Monica Wiley is granted on the offset issue.

## 2. *The Exclusion Issue*

Paragraph C4 of the VanLiner UM endorsement reads as follows:

C. *We Will Not Cover - Exclusions*:
　　This insurance does not apply to . . . .
　　　　4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

Counsel for Cassandra Spruill, Jasmine Spruill, and Monica Wiley have argued first that, as passengers, their clients were not "using" the tractor-trailer at the time of the accident and thus the exclusion in paragraph C4 does not apply to them. The court notes recent expansive readings of the term "using" in the context of insurance coverage by the Virginia Supreme Court. *See, e.g., State Farm Mutual Automobile Insurance Co. v. Rice*, 239 Va. 646, 391 S.E.2d 71 (1990); *Great American Insurance Company v. Cassell*, 239 Va. 421, 389 S.E.2d 476 (1990). Accordingly, the court holds that Cassandra Spruill, Jasmine Spruill, and Monica Wiley, as passengers, were using the tractor-trailer at the time of the accident.

However, for the exclusion to apply, the passengers must have been using the tractor-trailer without a reasonable belief that they were entitled to do so. Counsel for the passengers have argued, and counsel for Interstate and VanLiner have conceded, that the exclusion does not apply to Jasmine Spruill, who was just four months old at the time of the accident.

However, it is a disputed factual issue as to whether or not Cassandra Spruill and nine-year-old Monica Wiley had a reasonable belief that they were entitled to use the Interstate tractor-trailer at the time of the accident. Accordingly, the Motion for Partial Summary Judgment on the exclusion issue is denied as to Monica Wiley and Cassandra Spruill. The Motion for Partial Summary Judgment on the exclusion issue is granted as to Jasmine Spruill.

### 3. *The Availability Issue*

In their Cross-Motion for Partial Summary Judgment, Interstate and VanLiner have asked the court to declare that UM coverage is not available for the passengers if Spruill is found to have been operating the truck without Interstate's permission. The UM endorsement states:

> B. *We Will Pay*:
>    1. We will pay in accordance with the Virginia Uninsured Motorists Insurance Law all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle . . . .

An insured is defined in the endorsement as, *inter alias*, "[a]nyone else occupying a covered auto . . . ."

This definition of an insured is significantly broader than the definition found in Virginia Code § 38.2-2206(B). There an insured is defined as:

> the named insured and, while resident of the same household, the spouse of the named insured, and relatives of either . . . and any person who uses the motor vehicle to which the policy applies, with the express or implied consent of the named insured, and a guest in the motor vehicle to which the policy applies . . . .

Counsel for Interstate and VanLiner argue that the court should apply the statutory definition of insured to the passengers, rather than the endorsement definition, and hold that if Spruill was operating the truck without permission, there is no UM coverage available for the passengers' claims as a matter of law. They rely on the holding in *Nationwide Mutual Insurance Co. v. Harleysville Mutual Casualty Co.*, 203 Va. 600, 125 S.E.2d 840 (1962), in support of their cross-motion. In that case, a Harleysville insured gave her daughter permission to take out the insured automobile for the evening but told the girl that no one else was to drive it. The daughter later let a friend drive the car while two others rode along. A

single vehicle accident occurred, injuring one of the passengers. *Id.* at 602, 125 S.E.2d at 842.

Harleysville denied UM coverage for the injured passenger because the driver was a non-permissive user. Under the Harleysville UM endorsement, in order for a "guest" to qualify as an insured, the guest must have been in a motor vehicle to which the policy applied and the vehicle must have been used with the expressed or implied consent of the named insured. *Id.* at 603, 125 S.E.2d at 843. This definition was consistent with the UM statute's definition of an insured.

The Virginia Supreme Court held that the injured passenger was not entitled to recover from Harleysville. The court based its decision on the fact that the passenger did not meet the definition of an insured under either the statute or the Harleysville endorsement because she was a guest in a motor vehicle which was being driven without the permission of the named insured. The court emphasized the fact that the statutory and policy definitions of an insured were consistent. *Id.* at 603, 125 S.E.2d at 843.

In contrast to the *Harleysville* case, the definition of an insured under the VanLiner endorsement affords broader coverage than that mandated by Virginia Code § 38.2-2206(B). The Virginia Supreme Court evaluated a policy provision which was broader than a statutory provision in *Hill v. State Farm Mutual Automobile Insurance Co.*, 237 Va. 148, 375 S.E.2d 727 (1989). In *Hill*, the plaintiff was a minor who was injured while riding as a passenger on a moped which was owned and operated by another minor. The moped collided with a truck, causing plaintiff's injuries. The moped was not licensed, registered or insured. *Id.* at 149, 375 S.E.2d at 728.

Plaintiff and his mother sued the operator of the moped and also served process on State Farm, with whom plaintiff's mother had an automobile insurance policy which provided UM coverage. State Farm refused to provide coverage on the grounds that a moped was not a motor vehicle within the terms of the policy and therefore not an uninsured motor vehicle under the policy. *Id.* at 150, 375 S.E.2d at 728. The policy defined a motor vehicle as "a land motor vehicle" with a few specific exceptions. *Id.*

State Farm argued, and the trial court agreed, that the entire statutory scheme excluded coverage for mopeds and the statutory scheme superseded inconsistent policy provisions. The Virginia Supreme Curt reversed the trial court, reasoning that:

> [t]here is no prohibition against an insurer offering broader coverage than the minimum prescribed by law. The superseding provisions of Code Section [38.2-318] take effect only where an insurer seeks, by policy language, to narrow, avoid, vary or restrict the coverage the legislature has required. That is so because that superseding provisions are triggered expressly when policy terms are "inconsistent" with the terms prescribed by law. When the policy affords broader coverage than the law requires, no inconsistency exists; the policy provides all the coverage the statute demands, and more.

*Id.* at 152, 375 S.E.2d at 729.

Applying the reasoning in *Hill* to the case at bar, the VanLiner definition of insured is broader than the statutory definition, and it is therefore not inconsistent with the statute. The superseding provisions of Code Section 38.2-318 accordingly are not triggered in this case, and the policy definition applies. If the language in the policy is unambiguous, it is unnecessary to look beyond the language of the policy · itself. "An insurance policy is a contract, and, as in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such construction." *Id.* at 152, 375 S.E.2d at 729.

The terms of the VanLiner UM endorsement could not be any clearer. "Anyone" occupying a covered auto is entitled to UM coverage, provided no exclusions apply. At the time of the accident, Cassandra Spruill, Jasmine Spruill, and Monica Wiley were occupying a vehicle which was covered by the VanLiner policy. Therefore, they are insureds under the UM endorsement, subject to the endorsement exclusions. Accordingly, Interstate's and VanLiner's Cross-Motion for Partial Summary Judgment is denied.