UNITED SERVICES AUTOMOBILE ASSOCIATION

V.

ALICE ELIZABETH WEBB, ADMINISTRATRIX OF THE ESTATE OF SHARON LEE COOPER

Record No. 860237

June 10, 1988

Present: All the Justices

*Norman A. West (Godard & West*, on briefs), for appellant.
*Jerry M. Phillips (Whitestone, Phillips, Brent, Young & Merril, P.C.*, on brief), for appellee.

WHITING, J., delivered the opinion of the Court.

We granted this appeal to determine whether a provision in a family automobile liability policy "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury, sickness or disease, including death resulting therefrom" required an insurance company to pay punitive damages, in addition to compensatory damages, awarded in an action for wrongful death brought against an insured.

Sharon Lee Cooper was killed on May 5, 1984, when she was struck by an automobile owned by William J. McCarthy and driven by his son, John F. McCarthy. United Services Automobile Association (USAA) insured William J. McCarthy and John F. McCarthy, as a member of William J. McCarthy's household, under a family automobile liability policy containing the above provision. Alice Elizabeth Webb, as administratrix of Cooper's estate, recovered a judgment in the Circuit Court of Fairfax County against John F. McCarthy (the insured) for both compensatory and punitive damages.

Thereafter, Webb filed a motion for declaratory judgment against USAA to determine whether it was liable under its policy for payment of the punitive damage award. The trial court declared, on the basis of stipulated facts, that the policy provided coverage for punitive damages. USAA appeals this ruling, contending that the policy language did not include coverage for punitive damages.

In 1962, a federal court, construing Virginia law, opined that insuring against punitive damages for "willful, reckless, or wantonly negligent conduct" may violate public policy in Virginia.

*Northwestern National Casualty Co.* v. *McNulty*, 307 F.2d 432, 433-34 (5th Cir. 1962). In 1983, the General Assembly resolved the issue by enacting former Code § 38.1-42.2 (now Code § 38.2-227). At the time of this accident, Code § 38.1-42.2 provided:

> It is not against the public policy of the Commonwealth for any person to purchase insurance providing coverage for punitive damages arising out of the death or injury of any person as the result of negligence, including willful and wanton negligence, but excluding intentional acts. This section is declaratory of existing policy.

In *Lipscombe* v. *Security Ins.*, 213 Va. 81, 85, 189 S.E.2d 320, 323-24 (1972), we concluded that an insurance company was liable for punitive damages under our former uninsured motorist statute, which required all automobile liability policies issued in Virginia to contain "provisions undertaking to pay the insured *all sums* which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle." (Emphasis in original.) Because we found that the language of the uninsured motorist statute required the insurance company to pay punitive damages, we did not construe the policy language, which was similar to that in this case.

The question is whether the provision in dispute unambiguously limits coverage to compensatory damages for death and excludes coverage for punitive damages awarded as a consequence of a wrongful death which is occasioned by the insured's willful and wanton negligence. Well-settled principles guide us in our decision.

If the language of an insurance policy is unambiguous, we will give the words their ordinary meaning and enforce the policy as written. *Atlas Underwriters, Ltd.* v. *Meredith-Burda, Inc.*, 231 Va. 255, 259, 343 S.E.2d 65, 68 (1986). On the other hand, because the principal purpose of insurance is protection and insurance policies are drafted by insurance companies, if the language of a policy is capable of different interpretations, we will construe it in favor of coverage or indemnity and against a limitation of coverage. *White Tire Dist.* v. *Pennsylvania Nat. Mutual*, 235 Va. 439, 441, 367 S.E.2d 518, 519 (1988).

Asserting that the policy language plainly limits liability to compensatory damages, USAA argues that if the insured had de-

sired coverage for punitive damages, he should have obtained a policy with a specific provision including such coverage. Webb, standing in the shoes of the insured, argues that the language is ambiguous and should be construed to provide coverage. Webb maintains that if USAA had wanted to limit coverage, it should have done so in specific language.

 We have not yet addressed this issue; therefore, we look to the decisions in other jurisdictions for assistance. We agree with those decisions that have found that language similar to the language at issue is ambiguous, and that the ambiguity should be construed against the insurer which drafted the policy. *See Ohio Cas. Ins. Co. v. Welfare Finance Co.*, 75 F.2d 58, 59 (8th Cir. 1934), *cert. denied*, 295 U.S. 734 (1935); *American Fidelity & Casualty Co. v. Werfel*, 230 Ala. 552, 556, 162 So. 103, 106 (1935); *Abbie Uriguen Oldsmobile Buick, Inc. v. U.S. Fire Ins. Co.*, 95 Idaho 501, 507, 511 P.2d 783, 789 (1973); *Harrell v. Travelers Indem. Co.*, 279 Or. 199, 216, 567 P.2d 1013, 1015 (1977); *Hensley v. Erie Ins. Co.*, 168 W.Va. 172, 184, 283 S.E.2d 227, 229 (1981); *Brown v. Maxey*, 124 Wis. 2d 426, 442-44, 369 N.W.2d 677, 688 (1985).*

Other courts have found the language unambiguously to indicate that punitive damages, as well as compensatory damages, are recoverable under the policy. *See Norfolk & Western Railway Co. v. Hartford Accident & Indemnity Co.*, 420 F. Supp. 92, 94 n.1 (N.D. Ind. 1976); *Southern Farm Bureau Casualty Ins. Co. v. Daniel*, 246 Ark. 849, 852, 440 S.W.2d 582, 584 (1969); *Creech v. Aetna Cas. & Sur. Co.*, 516 So. 2d 1168, 1170 (La. App. 1987); *Baker v. Armstrong*, 106 N.M. 395, 396, 744 P.2d 170, 171 (1987); *Carroway v. Johnson*, 245 S.C. 200, 205, 139 S.E.2d 908, 910 (1965); *see also Anthony v. Frith*, 394 So. 2d 867, 868 (Miss. 1981); *Dairyland County Mutual Ins. Co. v. Wallgren*, 477 S.W.2d 341, 343 (Tex. Civ. App. 1972).

There is still another line of decisions in which the courts construe such policy language to include punitive damages based on the reasonable expectations of the insured. *See e.g. Lazenby v.*

---

* *Contra American Surety Co. of New York v. Gold*, 375 F.2d 523, 527 (10th Cir. 1967); *Gleason v. Fryer*, 30 Colo. App. 106, 109, 491 P.2d 85, 86 (1971); *Tedesco v. Maryland Casualty Co.*, 127 Conn. 533, 538, 18 A.2d 357, 359 (1941); *Nicholson v. American Fire & Cas. Ins. Co.*, 177 So. 2d 52, 53 (Fla. App. 1965); *Braley v. Berkshire Mut. Ins. Co.*, 440 A.2d 359, 361 (Me. 1982); *Crull v. Gleb*, 382 S.W.2d 17, 23 (Mo. App. 1964).

*Universal Underwriters Ins. Co.*, 214 Tenn. 639, 651-52, 383 S.W.2d 1, 5 (1964).

■ Webb's claim for punitive damages is based solely on a death resulting from the insured's willful and wanton negligence. The policy does not limit the insured's liability to compensatory damages for causing injury or death; rather, it includes an agreement to pay "all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . including death resulting therefrom." The insurance company could have inserted the word "compensatory" before the word "damages," or specifically excluded liability for punitive damages elsewhere in the policy, and resolved the ambiguity, but it did not. Therefore, we construe the resulting ambiguity against the insurance company and in favor of coverage.

Accordingly, we will affirm the action of the trial court in holding that punitive damages are covered by the insuring agreement.

*Affirmed.*